**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ANTHONY THOMPSON,

     Plaintiff - Appellant,

v.

DAVID R. PLATT, District Court Judge,
Geary County District Court, in his
individual capacity; GLEN F. VIRDEN,
Senior Special Agent, Kansas Bureau of
Investigation, in his individual capacity; T-
MOBILE U.S.A.; TIMOTHY BROWN,
Chief, Junction City Police Department, in
his individual capacity; BEN BENNETT,
Geary County Commissioner; LARRY
HICKS, Geary County Commissioner;
TONY WOLF, Sheriff, Geary County
Sheriff's Department, in his individual and
official capacity; GEARY COUNTY;
KANSAS BUREAU OF
INVESTIGATION; JUNCTION CITY
POLICE DEPARTMENT; GEARY
COUNTY SHERIFF'S OFFICE,

     Defendants - Appellees.

No. 19-3072
(D.C. No. 5:15-CV-03117-HLT-KGS)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

———————————————————

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.

———————————————————

Pro se prisoner Anthony Thompson appeals from a district court order dismissing his civil rights complaint, which alleged violations of federal and state wiretap statutes, violations of the Fourth Amendment, and civil conspiracy.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.[1]

## I.  BACKGROUND[2]

This case arises from a law enforcement investigation of drug trafficking in Geary County, Kansas.  In March and April 2013, Judge David R. Platt of the Eighth Judicial District of Kansas issued wiretap orders for cell phones used by Mr. Thompson and Albert Dewayne Banks.  Ensuing wiretaps produced information that law enforcement officers used to obtain search warrants for Mr. Thompson's residence, where "officers seized cell phones, cash, miscellaneous documents, drug paraphernalia, and credit cards." *United States v. Thompson*, 866 F.3d 1149, 1152-53 (10th Cir. 2017), *vacated and remanded by Thompson v. United States*, 138 S. Ct. 2706 (2018).

---

[1] Although we liberally construe pro se pleadings, we do not assume the role of Mr. Thompson's advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] In reviewing a district court's dismissal order, "we may exercise our discretion to take judicial notice of publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."  *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).  We thus consider the district court's decisions in Mr. Thompson's criminal case.

A. ***Mr. Thompson's Criminal Case***

A federal grand jury indicted Mr. Thompson on multiple counts of distributing and conspiring to distribute crack cocaine. He moved to suppress the intercepted communications. He argued (1) the wiretap orders did not permit the interception of electronic (text message) communications, and (2) officers impermissibly intercepted his wire communications outside the Eighth Judicial District's jurisdiction. The district court rejected both arguments.

First, the court ruled that investigators reasonably believed the wiretap orders, despite specifying only wire communications, permitted the interception of both text messages and oral communications.[3] In particular, the court found an understanding between Judge Platt and officers "that the orders were supposed to authorize interception

---

[3] The term "'wire communication' means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . ." 18 U.S.C. § 2510(1); *see also* Kan. Stat. Ann. § 22-2514(1). An "'aural transfer' means a transfer containing the human voice at any point between and including the point of origin and the point of reception[.]" 18 U.S.C. § 2510(18). In contrast, an "'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]" *Id.* § 2510(2). A telephone conversation qualifies as a "wire communication." *See United States v. Axselle*, 604 F.2d 1330, 1334 (10th Cir. 1979).

An "'electronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include—(A) any wire or oral communication . . . ." *Id.* § 2510(12); *see also* Kan. Stat. Ann. § 22-2514(11). "[T]ext messages constitute 'electronic communications' within the meaning of the Wiretap Act." *United States v. Jones*, 451 F. Supp. 2d 71, 75 (D.D.C. 2006), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010).

of electronic [i.e., text] communications." *United States v. Banks and Thompson*, 5:13-CR-40060-DDC, 2014 WL 4261344, at *4 (D. Kan. Aug. 29, 2014).  The court thus applied the good faith exception to the Fourth Amendment's exclusionary rule and refused to suppress the text messages. *Id.* at *5 (citing *United States v. Leon*, 468 U.S. 897, 920-22 (1984)).

Second, the court "rule[d] that a Kansas state court judge acting under Kansas law has no authority to authorize interception outside the judge's own judicial district." ROA, Vol. I at 125.  It granted the motion to suppress the extra-territorial communications, but it stated that officers "almost certainly" acted in good faith, "because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect." *United States v. Banks and Thompson*, No. 13-CR-40060-DDC, 2015 WL 2401048, at *3 (D. Kan. May 15, 2015).

A jury convicted Mr. Thompson and Mr. Banks on all counts.[4]

---

[4] We affirmed the convictions. *See Thompson*, 866 F.3d at 1152; *United States v. Banks*, 706 F. App'x 455, 460 (10th Cir. 2017).  The Supreme Court vacated those decisions and remanded for further consideration in light of *Carpenter v. United States*, 138 S. Ct. 2206, 2217, 2222 (2018).  In *Carpenter*, the Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell service location information]."  Because law enforcement relied on such information to prove some of Mr. Thompson's and Mr. Banks's communications, we remanded to the district court to determine whether the government presented sufficient evidence absent the information. *United States v. Thompson*, 740 F. App'x 166, 168 (10th Cir. 2018).

B. *Mr. Thompson's Civil Case*

While his criminal proceeding was pending, Mr. Thompson filed a pro se suit in the District of Kansas against Judge Platt, the law enforcement officers who executed the wiretap orders, Geary County Commissioners Ben Bennett and Larry Hicks, and T-Mobile USA, Inc.[5]  The court dismissed Judge Platt on immunity grounds and the commissioners because Mr. Thompson failed to allege wrongdoing by them.

In an amended pro se complaint, Mr. Thompson named Judge Platt, Junction City Police Chief Timothy Brown, Special Agent Glen Virden of the Kansas Bureau of Investigation, Geary County Sheriff Tony Wolf, and T-Mobile.  Mr. Thompson alleged:

- Judge Platt (1) knew or should have known he could not issue wiretap orders beyond his territorial jurisdiction, and (2) failed to appoint Mr. Thompson counsel.  ROA, Vol. I at 316.

- Chief Brown, Agent Virden, and Sheriff Wolf ("law enforcement defendants") knew or should have known that the wiretap orders sought communications outside Judge Platt's territorial jurisdiction and did not encompass text messages.

- The law enforcement defendants impermissibly disclosed his text messages to third parties, such as the United States Attorney's Office, despite the absence of reference to texts in the wiretap orders.

- The law enforcement defendants "all had final decision making authority within their respect[ive] departments."  *Id.* at 313.

- T-Mobile improperly intercepted and disclosed his text messages, resulting in the improper execution of a search warrant.

---

[5] In addition, Mr. Thompson listed in the complaint's caption Geary County, the Kansas Bureau of Investigation, the Junction City Police Department, and the Geary County Sheriff's Office.

5

- "[T]he defendants act[ed] under the color of state law." *Id.* at 312.

He sued under 18 U.S.C. § 2520 (providing a civil action for the unlawful interception, disclosure, or use of wire, oral, or electronic communications), Kan. Stat. Ann. § 22-2518 (same), 42 U.S.C. § 1983, and civil conspiracy law. The following chart summarizes the specific claims alleged in the amended complaint against each of the defendants:

| DEFENDANTS | CLAIMS FOR RELIEF |
|---|---|
| **Judge Platt**, sued in his individual and official capacities | NONE SPECIFIED |
| **Chief Brown, Agent Virden, and Sheriff Wolf**, each sued in his individual and official capacity | 1.  Violation of Kan. Stat. Ann. § 22-2518 <br> 2.  Violation of 18 U.S.C. § 2520 <br> 3.  Violation of 42 U.S.C. § 1983 (Fourth Amendment) <br> 4.  "Conspiracy to Commit the Substantive Counts" |
| **T-Mobile** | 1.  Violation of Kan. Stat. Ann. § 22-2518 <br> 2.  Violation of 18 U.S.C. § 2520 <br> 3.  Violation of 42 U.S.C. § 1983 (Fourth Amendment) |

The district court screened the amended complaint under 28 U.S.C. §§ 1915(e) and 1915A, and dismissed (1) Judge Platt, (2) any defendant named in the original complaint but not named in the amended complaint, (3) Chief Brown in his official capacity, and (4) Agent Virden in his official capacity. The remaining defendants moved to dismiss under Rule 12(b)(6), including Sheriff Wolf, who sought dismissal of the individual capacity and official capacity claims pled against him. The district court granted the motions. Mr. Thompson unsuccessfully sought reconsideration under Rule

59(e).  His appeal challenges the Rule 12(b)(6) dismissals and the denial of

reconsideration.[6]

## II. DISCUSSION

### A.  *Standard of Review*

We review de novo a district court's dismissal of an action under Rule 12(b)(6).

*Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  Plausibility requires "more than the mere possibility of

misconduct."  *Id.* at 679.  The plaintiff must "plead[ ] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* at 678.  "[W]here 'there is no disputed issue of fact raised by an affirmative defense,

or the facts are completely disclosed on the face of the pleadings, . . . it is appropriate and

expedient to dispose of a claim by a motion to dismiss [based on an affirmative defense]

under Rule 12(b)."  *Frost v. ADT, LLC*, 947 F.3d 1261, 1267 (10th Cir. 2020) (quoting

5 Arthur R. Miller et al., Federal Practice and Procedure § 1277 (3d ed. 2002) (August

2019 update)).

---

[6] On appeal, Mr. Thompson does not contest and thus has waived any challenge to
the district court's dismissal of his claims against Judge Platt or to the official capacity
claims against Chief Brown and Agent Virden.  *See Burke v. Regalado*, 935 F.3d 960,
995 (10th Cir. 2019) ("The failure to raise an issue in an opening brief waives that issue."
(quotations omitted)).

B. *Wiretap Claims*

The district court concluded that Mr. Thompson failed to plead a plausible federal

or state wiretap claim because the defendants relied in good faith on Judge Platt's orders

regarding both electronic (text messages) and extra-territorial communications.  We

resolve these claims as follows:

As to the law enforcement defendants:

> (1) We affirm dismissal of the text messages claim because
> the district court's determination in the criminal case that
> the officers acted in good faith precludes Mr. Thompson
> from contesting a good faith affirmative defense in this
> case;[7] and

> (2) We reverse dismissal of the extra-territorial
> communications claim because the district court erred in
> holding that the disposition in the criminal case precluded
> Mr. Thompson from contesting a good faith defense
> here.  Collateral estoppel does not apply because the
> district court in the criminal case excluded the extra-
> territorial evidence rather than rely on the officers' good
> faith to admit it.

As to T-Mobile:

> We reverse dismissal of the text messages claim
> because the collateral estoppel applicable to the law
> enforcement defendants does not extend to T-Mobile.

---

[7] To the extent the district court in this case suggested that Mr. Thompson's
statutory wiretap claims failed without his alleging lack of good faith, we note that a
plaintiff is not required to anticipatorily plead against an affirmative defense.  *See
Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

1. **Legal Background**

Title I of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18

U.S.C. §§ 2510–2522, provides that "any person whose wire, oral, or electronic

communication is intercepted, disclosed, or intentionally used in violation of this chapter

may in a civil action recover from the person or entity, other than the United States,

which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

Kansas law provides a nearly identical remedy. *See* Kan. Stat. Ann. § 22-2518(1).

Both the federal and state statutes provide for "a complete defense" for "good faith

reliance" on "a court warrant or order." 18 U.S.C. § 2520(d); Kan. Stat. Ann.

§ 22-2518(2). The statutory good faith defense is akin to the good faith exception to the

exclusionary rule for Fourth Amendment violations. *See United States v. Moore*, 41 F.3d

370, 376 (8th Cir. 1994) (observing that the federal wiretap statute's "legislative history

expresses a clear intent to adopt suppression principles developed in Fourth Amendment

cases"); *see, e.g.*, *Reed v. Labbe*, No. CV 10–8315–SVW (OP), 2012 WL 5267726, at *9

(C.D. Cal. Oct. 22, 2012) (relying on findings in the plaintiff's underlying criminal case

to conclude that § 2520(d) provided a complete defense to plaintiff's claims under the

ECPA and required dismissal under Rule 12(b)(6)); *Marino v. Hegarty*, No. 86 C 6759,

1987 WL 9582, at *1 (N.D. Ill. Apr. 10, 1987) ("Good faith reliance on a court order is a

defense both to fourth amendment claims and to the claims under [the ECPA].").

To invoke the good faith defense, an "officer's reliance on [a] defective warrant

still must be objectively reasonable." *United States v. Russian*, 848 F.3d 1239, 1246

(10th Cir. 2017); *see also Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997) (stating that the good-faith defense to an 18 U.S.C. § 2707 civil claim under Title II of the ECPA for unauthorized access to stored electronic communications requires, like the Fourth Amendment, objectively reasonable reliance on a warrant).  "The test is an objective one that asks 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009) (quoting *Leon*, 468 U.S. at 922 n.23).  "In addition, application of the 'good faith' exception assumes 'that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant.'" *United States v. Leary*, 846 F.2d 592, 607 n.27 (10th Cir. 1988) (quoting *Leon*, 468 U.S. at 918 n.19).

2. **Chief Brown, Agent Virden, and Sheriff Wolf**

a. *Text messages*

The district court in Mr. Thompson's criminal case said that, although Judge Platt's orders authorized interception of "wire communications" without specifying "electronic [text] communications," Judge Platt "and [the] executing officers both understood . . . that the authorization included interception of text messages." *Banks*, 2014 WL 4261344, at *5.  It found that the law enforcement defendants reasonably believed the orders permitted them to intercept text messages.  *See id.*  The court therefore held that their "interception of the text messages falls within the good-faith exception to the Fourth Amendment's exclusionary rule." *Id.* at *4-5.

10

The district court's determination in Mr. Thompson's criminal case that the officers acted in good faith regarding the interception and disclosure of text messages precludes him from contesting the law enforcement defendants' affirmative defense of good faith.[8]  "[T]he doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit." *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009).  "Under federal law, issue preclusion attaches . . . when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Id.* (quotations omitted and alterations incorporated)).[9]  The doctrine is applicable in a civil case to preclude relitigation of an issue decided in favor of the prosecuting authority in a prior criminal case.  Restatement (Second) of Judgments § 85(2)(a) (1982).[10]

Issue preclusion has four elements:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a

---

[8] Although only T-Mobile argues for the application of issue preclusion, a court may sua sponte raise a preclusion bar where, as here, the court is on notice that the issue has been previously decided.  *See Arizona v. California*, 530 U.S. 392, 412 (2000).

[9] "Because we are here concerned with the preclusive effect of a federal-court judgment, federal law applies." *Id.*

[10] *See also id.* cmt. e, illus. 7 ("D is convicted of arson of a building.  D then brings an action against I, an insurer which wrote a fire insurance policy on the building, seeking to recover on the policy.  The policy has an exclusion of liability for losses caused by intentional act of the insured.  The determination in the criminal prosecution that D deliberately set the fire is conclusive in favor of I in the subsequent civil action.").

> party, to the prior adjudication, and (4) the party against
> whom the doctrine is raised had a full and fair opportunity to
> litigate the issue in the prior action.

*Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir.

2004) (quotations omitted).  Here, those elements are met.

First, good faith under the wiretap statutes derives from the good faith exception to

the Fourth Amendment's exclusionary rule, *see Moore*, 41 F.3d at 376; *Davis*, 111 F.3d

at 1484, and turns on the objective reasonableness of the officers' reliance on Judge

Platt's wiretap orders to intercept text messages.  *See Davis*, 111 F.3d at 1484.

Second, the district court in Mr. Thompson's criminal case finally adjudicated the

good faith issue when it "refuse[d] to suppress [text messages] on the basis that the orders

authorized interception of wire communications only."  *Banks*, 2014 WL 4261344, at *5.

*See* Restatement (Second) of Judgments § 13 (1982) (stating that "for purposes of issue

preclusion (as distinguished from merger and bar), 'final judgment' includes any prior

adjudication of an issue in another action that is determined to be sufficiently firm to be

accorded conclusive effect").

Third, Mr. Thompson was a party-defendant to the motion-to-suppress litigation

that led to the determination of good faith.

Fourth, Mr. Thompson had a full and fair opportunity to litigate good faith.  He

participated in the suppression proceedings, which included testimony from Agent

Virden, and the good faith issue was squarely presented to the district court.  *See Burrell*

*v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (explaining that "the inquiry into

12

whether a party had a full and fair opportunity to litigate an issue" involves "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties" (quotations omitted)).

Mr. Thompson thus cannot relitigate in this civil action whether the officers relied on Judge Platt's wiretap orders in good faith when seeking his text messages. *See, e.g.*, *Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir. 1984) ("There can be little doubt that the issue of Holmgreen's veracity and good faith—the linchpin of Guenther's § 1983 Fourth Amendment claim—was both raised and actually litigated in the preliminary hearing."); *Blinder, Robinson & Co. v. SEC*, 565 F. Supp. 74, 77 (D. Colo. 1983) (collecting cases for the proposition that "[t]he collateral estoppel doctrine has been held to bar a subsequent civil action challenging the constitutional sufficiency of a Fourth Amendment search where, in a prior criminal action, the issue of suppression had been raised by the defendant and decided adversely to him"), *aff'd*, 748 F.2d 1415 (10th Cir. 1984).

The district court correctly granted the law enforcement defendants' motions to dismiss the statutory claims pertaining to text messages.[11]

---

[11] Mr. Thompson mistakenly relies on *United States v. Medlin*, 798 F.2d 407 (10th Cir. 1986) and *United States v. McNulty*, 729 F.2d 1243 (10th Cir. 1983), for the proposition that "good faith reliance" is not a defense. ROA, Vol. I at 313-15. Neither concerns defenses asserted here.

b. *Extra-territorial communications*

In his amended complaint, Mr. Thompson alleged that Judge Platt acted beyond his jurisdiction and that "all defendants knew or had reason to know that the [wiretap] order they were endorsing was invalid on its face."  ROA, Vol. I at 313.  He further alleged that the law enforcement defendants unlawfully intercepted calls while he was in the privacy of his home and "then used this private information in order to further there [sic] own personal agenda."  *Id.* at 315.  A Rule 12(b)(6) motion to dismiss "accept[s] all well-pled factual allegations [in the complaint] as true and view[s] these allegations in the light most favorable to the nonmoving party."  *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quotation and citation omitted).  We conclude that Mr. Thompson has "plead[ ] factual content that allows the court to draw the reasonable inference that the [law enforcement] defendant[s] [are] liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Unlike the good faith affirmative defense to the text message claim, collateral estoppel is not available to the law enforcement defendants on this claim.  Judge Platt's orders permitted the law enforcement defendants to intercept Mr. Thompson's communications without a territorial limit.  The district court in Mr. Thompson's criminal case stated that the officers "almost certainly" acted in good faith given "the subtle[ ] [and] technical" nature of the jurisdictional defect, but it excluded the extra-territorial intercepted evidence, concluding there was no good-faith exception to the statutory requirement for "suppress[ing] unlawfully intercepted wire and oral communications."

14

*Banks*, 2015 WL 2401048, at *2, *3. Because the court made only an observation about good faith but not a finding, Mr. Thompson is not collaterally estopped from litigating the issue of good faith regarding his wiretap claims alleging the interception of extra-territorial communications.

We therefore reverse the dismissal of the extra-territorial wiretapping claims against the law enforcement defendants.

## 2. **T-Mobile**

In his amended complaint, Mr. Thompson alleged that T-Mobile disclosed his electronic communications (text messages) to the other defendants without authorization in the wiretap order. He further alleged the disclosures included "private text and picture messages to family members" sent from "the privacy of [his] home." ROA, Vol. I at 314. Viewing these allegations in the light most favorable to Mr. Thompson, *see Peterson*, 594 F.3d at 727, we conclude he has pled sufficient facts to plausibly show that T-Mobile "is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

The district court dismissed these claims against T-Mobile primarily for the same reason it did so for the law enforcement defendants: "the record establishes [Mr. Thompson's] wiretap claims are barred by the good faith defense." ROA, Vol. II at 189.[12] Although businesses like T-Mobile may rely on the good faith defense, *see* 18

---

[12] In a brief footnote, the district court also said 18 U.S.C. § 2511(2)(a)(ii) "exempted" T Mobile from liability "'for providing information, facilities, or assistance in accordance with the terms of a court order[.]'" *See* ROA, Vol. II at 190 n.7 (quoting the statute). Because T-Mobile did not address § 2511(2)(a)(ii) in the district court or in its brief here, we decline to affirm on this ground. *See Walton v. Powell*, 821 F.3d 1204,

U.S.C. §2520(a); Kan. Stat. Ann. § 22-2518(2), T-Mobile stands in different shoes than the law enforcement defendants.

T-Mobile attempts to rely on the collateral estoppel effect of the criminal case. It argues "that it was objectively reasonable for law enforcement to rely on Judge Platt's wiretap order to seek and obtain Thompson's text messages from T-Mobile, even though the order did not explicitly encompass 'electronic communications.'" T-Mobile Aplee. Br. at 17-18. T-Mobile further posits that "[t]his same finding establishes, as a matter of law, T-Mobile's 'good faith reliance' defense under the wiretap statutes." *Id.* at 18. But the district court in the criminal case did not address T-Mobile's good faith. And collateral estoppel requires that "the issue previously decided [be] *identical* with the one presented in the action in question." *Park Lake Res.*, 378 F.3d at 1136 (emphasis added). T-Mobile provides no applicable authority that it can preclude Mr. Thompson's wiretap claims based on the district court's determination that law enforcement acted in good faith.[13] We therefore reverse the dismissal of Mr. Thompson's statutory wiretap claims against T-Mobile.

---

1212 (10th Cir. 2016); *see also Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) (declining to address an alternative basis for affirming the district court's dismissal where appellees did not adequately develop an argument). Further, Judge Platt's wiretap order did not include electronic communications (text messages), so T-Mobile's disclosures were not "in accordance with [its] terms." § 2511(2)(a)(ii).

[13] The cases T-Mobile cites in its collateral estoppel analysis have no bearing on this case. In *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984), plaintiff alleged under § 1983 that his arrest violated the Fourth Amendment and due process. *Id.* at 881. The court affirmed summary judgment for the defendants on the Fourth Amendment claim because a state court decided at the preliminary hearing in plaintiff's criminal case

C. *Fourth Amendment § 1983 Claims*

Mr. Thompson argues the Defendants violated his Fourth Amendment rights by intercepting and disclosing his text messages.  He contends the district court therefore erred in dismissing his § 1983 claim.  We disagree.

1. **Legal Background**

a. *Fourth Amendment*

"The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).  The Fourth Amendment applies to wiretapping. *See Katz v. United States*, 389 U.S. 347, 353 (1967); *United States v. Williams*, 827 F.3d 1134, 1145 (D.C. Cir. 2016) (noting that "two different legal theories"—the Fourth Amendment and wiretap statutes—are available to challenge "evidence gathered as a result of wiretap surveillance").

---

that there was probable cause for the arrest.  *Id.* at 884, 889.  This case does not help T-Mobile.

　　T-Mobile also cites *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683 (10th Cir. 1992), which concerned whether the Affiliated Ute Citizens of the State of Utah or the Ute Distribution Corporation was the authorized representative of the mixed-blood Utes to manage their portion of the Ute Tribe's indivisible assets.  *Id.* at 684.  This court said the Supreme Court had decided the issue, precluding the plaintiffs-appellants from relitigating it.  *Id.* at 690.  *Murdock* provides no support for T-Mobile's argument other than stating the Tenth Circuit standard for collateral estoppel.

b. *Qualified immunity defense*

Qualified immunity is available to "[i]ndividual defendants named in a § 1983

action" as a shield "from damages actions unless their conduct was unreasonable in light

of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir.

2014) (quotations omitted). "In resolving a motion to dismiss based on qualified

immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a

violation of a constitutional right, and (2) whether the right at issue was clearly

established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d

1185, 1188 (10th Cir. 2013) (quotations omitted). The clearly-established-law prong

requires both "a sufficiently clear foundation in then-existing precedent" and a "clear[ ]

prohibit[ion] [on] the officer's conduct in the particular circumstances before him."

*District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). "The doctrine of qualified

immunity is designed to protect public officials who act in good faith, on the basis of

objectively reasonable understandings of the law at the time of their actions." *Weigel v.

Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008) (quotations omitted and alterations

incorporated).

c. *State action requirement*

Only persons acting under color of state law may be sued under § 1983. *See West

v. Atkins*, 487 U.S. 42, 48 (1988). "[I]n rare circumstances[,] . . . a private party [can] be

viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127,

1130 (11th Cir. 1992). "Private individuals and entities may be deemed state actors . . . if

they have acted together with or have obtained significant aid from state officials, or if

their conduct is otherwise chargeable to the state." *Johnson v. Rodrigues*, 293 F.3d 1196,

1202 (10th Cir. 2002) (quotations and alterations omitted). But a private party's mere

compliance with a court order does not constitute state action. *See, e.g.*, *Fairley v. PM

Mgmt.-San Antonio AL, L.L.C.*, 724 F. App'x 343, 345 (5th Cir. 2018) (concluding that a

nursing home's compliance with probate court's order was not state action), *cert. denied*,

139 S. Ct. 815 (2019); *Green v. Truman*, 459 F. Supp. 342, 345 (D. Mass. 1978) (ruling

that a court order requiring a doctor to supervise a child's chemotherapy did "not clothe

[the doctor] with the authority of state law necessary to satisfy the state actor

requirement").

2. **Analysis**

   a. *Chief Brown, Agent Virden, and Sheriff Wolf*

The law enforcement defendants argued in district court that they are entitled to

qualified immunity on Mr. Thompson's Fourth Amendment § 1983 claim.[14]   The district

---

[14] As for the official capacity claim against Sheriff Wolf, it "generally represents only another way of pleading an action against [the] entity of which [he] is an agent, and as long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Brown v. Buhman*, 822 F.3d 1151, 1162 n.10 (10th Cir. 2016) (internal quotations omitted). "To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Id.* (quotations omitted). We agree with the district court that Mr. Thompson has not alleged a Geary County policy or custom that caused his alleged Fourth Amendment violation. His conclusory allegation that Sheriff Wolf "had final

court relied on the clearly-established-law prong of the qualified immunity test and found that immunity applied because Mr. Thompson had identified no authority "holding that the Fourth Amendment is violated by the <u>specific</u> facts presented here." R., Vol. II at 192.

We agree that qualified immunity applies under the second prong. The district court in Mr. Thompson's criminal case determined that the law enforcement defendants relied in good faith on Judge Platt's wiretap orders in intercepting his text messages. "[R]easonable person[s] in [their] position would not know that [their] actions violated the Fourth Amendment for the same reasons [that] establish the good faith defense to liability under [18 U.S.C. § 2520]." *Frierson v. Goetz*, 99 F. App'x. 649, 654 (6th Cir. 2004). Where, as here, "the requisites of the statutory good faith defense are met, then the standard for qualified immunity as a defense to Fourth Amendment violations is also satisfied." *Kilgore v. Mitchell*, 623 F.2d 631, 633 (9th Cir. 1980) (footnote omitted); *see also* 18 U.S.C. 2520(d) (providing that good-faith reliance "is a complete defense against any civil or criminal action brought under this chapter *or any other law*" (emphasis added)). The district court correctly dismissed Mr. Thompson's Fourth Amendment claims against the law enforcement defendants.

---

decsion [sic] making authority within [his] . . . department[ ]," ROA, Vol. I at 313, is insufficient. *See Norton v. City of Marietta*, 432 F.3d 1145, 1155 (10th Cir. 2005).

20

3. **T-Mobile**

Mr. Thompson failed to allege T-Mobile engaged in state action. He claimed

T-Mobile (1) received a wiretap order that did not cover text messages, (2) intercepted

those messages, and (3) disclosed them to the other defendants. But the amended

complaint did not allege T-Mobile participated in procuring the wiretap order, obtained

aid from state officials, or performed acts attributable to the state. Thus, Mr. Thompson

failed to allege T-Mobile's compliance with Judge Platt's order constitutes state action.

The district court correctly dismissed Mr. Thompson's Fourth Amendment claim against

T-Mobile.

## D. *Civil Conspiracy*[15]

"Allegations of conspiracy may . . . form the basis of a § 1983 claim." *Tonkovich*

*v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "[T]o recover under a § 1983

conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an

actual deprivation of rights; pleading and proof of one without the other will be

---

[15] The amended complaint does not say whether this claim is predicated on § 1983 or Kansas law. The claim fails under both. To the extent Mr. Thompson is attempting to assert a federal common-law conspiracy claim, courts generally construe such claims as § 1983 conspiracy claims, and we do the same. *See Burdett v. Reynoso*, No. C-06-00720 JCS, 2007 WL 2429426, at *29 (N.D. Cal. Aug. 23, 2007) (finding common law conspiracy claim properly construed as § 1983 claim and collecting authority recognizing a § 1983 conspiracy claim), *aff'd*, 399 F. App'x 276 (9th Cir. 2010). Mr. Thompson does not appear to be advancing a § 1985(3) conspiracy claim, which "generally describes a conspiracy of two or more persons for the purpose of depriving . . . another of equal protection of the laws or equal privileges and immunities under the laws." *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).

insufficient." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).  Likewise,

"[a] civil conspiracy is not actionable under Kansas law without commission of some

wrong giving rise to a tortious cause of action independent of conspiracy." *Pepsi-Cola*

*Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1268 (10th Cir. 2005).

Mr. Thompson alleged that Chief Brown, Agent Virden, and Sheriff Wolf

"knowingly conspired with one another to commit the substantive counts in th[e]

complaint," ROA, Vol. I at 320, and that they knew or should have known the wiretap

orders were unlawful.  The district court determined that Mr. Thompson's conspiracy

claim failed because there was neither an underlying unlawful act nor sufficiently pled

facts of a conspiracy.  We agree with the latter determination.

An actionable conspiracy "requires at least a combination of two or more persons

acting in concert and an allegation of a meeting of the minds, an agreement among the

defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213,

1227-28 (10th Cir. 2010); *see also Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan.

1984) (stating elements of a civil conspiracy as: "(1) two or more persons; (2) an object

to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one

or more unlawful overt acts; and (5) damages as the proximate result thereof" (quotations

omitted)).

"[A] plaintiff must allege specific facts showing an agreement and concerted

action amongst the defendants" because "conclusory allegations of conspiracy are

insufficient to state a valid § 1983 claim." *Brooks*, 614 F.3d at 1228 (quotations omitted

and alterations incorporated).  Mr. Thompson's allegation of a conspiracy is conclusory.

It identifies no agreement among Chief Brown, Agent Virden, and Sheriff Wolf to work

together to achieve an unlawful objective.  *See, e.g.*, *Vieux v. E. Bay Reg'l Park Dist.*,

906 F.2d 1330, 1343 (9th Cir. 1990) (observing that "[a] civil conspiracy is a

combination of two or more persons who, by some concerted action, intend to

accomplish some unlawful objective for the purpose of harming another which results in

damage," and concluding that there was no evidence of an illegal objective despite

correspondence and discussions between the defendants).

The district court appropriately dismissed Mr. Thompson's civil conspiracy claim.

## III.  **CONCLUSION**

We affirm the district court's judgment in part, but we reverse and remand for

further proceedings on Mr. Thompson's statutory wiretap claims about the law

enforcement defendants' interception and disclosure of extra-territorial communications

and T-Mobile's interception and disclosure of text messages.  Also, we deny Mr.

Thompson's request for the assistance of appellate counsel, and we remind him to

continue making partial payments until the entire filing fee has been paid.[16]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[16] To the extent Mr. Thompson appeals the district court's order denying his Rule 59(e) motion, we affirm because the court did not abuse its discretion.